No. 22-30353

# United States Court of Appeals
# for the Fifth Circuit

AMERICAN PETROLEUM INSTITUTE; AMERICAN EXPLORATION &
PRODUCTION COUNCIL; INDEPENDENT PETROLEUM ASSOCIATION OF
AMERICA; INTERNATIONAL ASSOCIATION OF DRILLING CONTRACTORS;
ENERGEO ALLIANCE, FORMERLY KNOWN AS INTERNATIONAL ASSOCIATION
OF GEOPHYSICAL CONTRACTORS; NATIONAL OCEAN INDUSTRIES
ASSOCIATION; MONTANA PETROLEUM ASSOCIATION; NORTH DAKOTA
PETROLEUM COUNCIL; PETROLEUM ALLIANCE OF OKLAHOMA; SOUTHEAST
OIL & GAS ASSOCIATION; UTAH PETROLEUM ASSOCIATION; WESTERN
STATES PETROLEUM ASSOCIATION; ARIES MARINE CORPORATION;
VALVEWORKS USA, INCORPORATED,

*Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF INTERIOR

*Defendant*

v.

HEALTHY GULF; CENTER FOR BIOLOGICAL DIVERSITY; CITIZENS FOR A
HEALTHY COMMUNITY; COOK INLETKEEPER; DEFENDERS OF WILDLIFE;
FOOD & WATER WATCH; FRIENDS OF THE EARTH; GREAT OLD BROADS FOR
WILDERNESS; MONTANA ENVIRONMENTAL INFORMATION CENTER; OCEANA;
SIERRA CLUB; WILDERNESS SOCIETY; VALLEY ORGANIC GROWERS
ASSOCIATION; WESTERN ORGANIZATION OF RESOURCE COUNCILS;
WESTERN WATERSHEDS PROJECT; WILDEARTH GUARDIANS,

*Movants–Appellants.*

On Appeal from United States District Court for the Western District of
Louisiana, No. 2:21-CV-2506, Honorable Terry A. Doughty

## APPELLANTS' OPENING BRIEF

SUBMITTED BY:

Christopher D. Eaton
Earthjustice
810 3rd Avenue
Seattle, WA 98104

(206) 343-7340
ceaton@earthjustice.org

(additional counsel listed at end)

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

**Movants-Appellants:**

1. Center for Biological Diversity
2. Citizens for a Healthy Community
3. Cook Inletkeeper
4. Defenders of Wildlife
5. Food & Water Watch
6. Friends of the Earth
7. Great Old Broads for Wilderness
8. Healthy Gulf
9. Montana Environmental Information Center
10. Oceana, Inc.
11. Sierra Club
12. The Wilderness Society
13. Valley Organic Growers Association
14. Western Organization of Resource Councils
15. Western Watersheds Project
16. WildEarth Guardians

**Counsel for Movants-Appellants Cook Inletkeeper, Defenders of Wildlife, Friends of the Earth, Great Old Broads for Wilderness, Healthy Gulf, Oceana, Inc., Sierra Club, The Wilderness Society, Valley Organic Growers Association, and Western Watersheds Project:**

17. Kirti Datla, Earthjustice
18. Thomas R. Delehanty, Earthjustice
19. Christopher Douglass Eaton, Earthjustice
20. Shana Emile, Earthjustice
21. Michael S. Freeman, Earthjustice
22. Corinne Jacqueline Van Dalen, Earthjustice

**Counsel for Movants-Appellants Center for Biological Diversity, Citizens for a Healthy Community, Food & Water Watch, Montana Environmental Information Center, WildEarth Guardians, and Western Organization of Resource Councils:**

23. Melissa Anne Hornbein, Western Environmental Law Center
24. Emily Henrion Posner, Law Office of Emily H. Posner
25. Kyle J. Tisdel, Western Environmental Law Center

**Plaintiffs-Appellees:**

26. American Petroleum Institute
27. American Exploration & Production Council
28. Aries Marine Corp
29. EnerGeo Alliance (formerly known as International Association of Geophysical Contractors)
30. Independent Petroleum Association of America
31. International Association of Drilling Contractors
32. National Ocean Industries Association
33. Montana Petroleum Association
34. North Dakota Petroleum Council
35. Petroleum Alliance of Oklahoma
36. Southeast Oil & Gas Association
37. Utah Petroleum Association
38. Western States Petroleum Association
39. Valveworks USA Inc

**Counsel for Plaintiffs-Appellees:**

40. James M. Auslander, Beveridge & Diamond
41. Victoria Elizabeth Emmerling, Gieger Laborde & Laperouse
42. Kenneth H. Laborde, Gieger Laborde & Laperouse
43. Peter J. Schaumberg, Beveridge & Diamond

**Defendants:**

44. Bureau of Land Management
45. Bureau of Ocean Energy Management
46. Nada Culver, in her official capacity as Deputy Director of Policy & Programs, Bureau of Land Management

47. Laura Daniel-Davis, in her official capacity as Principal Deputy Assistant Secretary for Land & Minerals Management
48. Debra Haaland, in her official capacity as Secretary of the Interior
49. Amanda Lefton, in her official capacity as Director of the Bureau of Ocean Energy Management
50. U.S. Department of the Interior

**Counsel for Defendants:**

51. Michael Sawyer, U.S. Department of Justice, Environmental Enforcement Section
52. Thomas Ports, Jr., U.S. Department of Justice, Civil Rights Division, Criminal Section

August 8, 2022

/s/ Christopher D. Eaton

Christopher Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
ceaton@earthjustice.org

*Counsel for Movants-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument.  *See* Fed. R. App. P. 34(a), (f); Fifth Circuit R. 28.2.3.  Though this case involves a clear legal error by the court below, the appropriate legal standard for intervention under Federal Rule of Civil Procedure 24 is an important, recurring issue.  Oral argument would substantially aid the Court in its resolution of the case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. ii

STATEMENT REGARDING ORAL ARGUMENT .................................... v

TABLE OF CONTENTS ................................................................... vi

TABLE OF AUTHORITIES .............................................................. vii

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT .................................................... 3

STATEMENT OF THE ISSUES ........................................................ 4

STATEMENT OF THE CASE ........................................................... 4

SUMMARY OF THE ARGUMENT .................................................. 14

STANDARD OF REVIEW ............................................................... 18

ARGUMENT ................................................................................ 199

I.      The Conservation Groups Were Entitled To Intervention As A
        Matter of Right ................................................................. 199

        A.      The Conservation Groups met their minimal burden to show
                the possibility of inadequate representation ................. 20

                1.      The Conservation Groups' interests are not aligned with
                        the Federal Defendants' interests ..................... 21

                2.      The court below erred in applying the "same ultimate
                        objective" presumption of adequate representation ........... 27

                3.      If the presumption applies, the Conservation Groups
                        rebutted it ................................................. 32

        B.      The possibility that a party seeking to intervene might be
                allowed to file an amicus brief is irrelevant to the Rule 24(a)
                inquiry ...................................................................... 38

II.     The District Court Abused Its Discretion When  It Denied Permissive
        Intervention ...................................................................... 39

CONCLUSION ............................................................................... 39

CERTIFICATE OF COMPLIANCE .................................................. 432

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020) ...................................................................... 41

*Berger v. N.C. State Conf. of the NAACP*,
    142 S. Ct. 2191 (2022)...........................................................3, 19, 30, 37

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ...............................................................*passim*

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) .................................................................. 35

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
    788 F.3d 312 (D.C. Cir. 2015)...................................................... 31, 37, 39

*Ctr. for Biological Diversity v. EPA*,
    No. 18-60102 (5th Cir. Mar. 28, 2018) .................................................... 22

*Dakota Res. Council v. U.S. Dep't of the Interior*,
    No. 1:22-cv-01853-CRC (D.D.C. filed June 28, 2022) ............................ 13

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) .................................................................................. 36

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) ...................................................................... 38

*Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*,
    817 F.3d 198 (5th Cir. 2016) ........................................................ 19, 34, 35

*Field v. Anadarko Petroleum Corp.*,
    35 F.4th 1013 (5th Cir. 2022) .................................................................3, 18

*Friends of the Earth v. Haaland*,
    Civ. A. No. 21-2317 (RC), 2022 WL 254526 (D.D.C. Jan. 27, 2022) ....... 10

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003).................................................................. 24

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)...................................................................... 34

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir. 1987) .................................................. 27

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ..............................................2, 7, 34

*Louisiana v. Biden*,
No. 2:21-cv-778 (W.D. La. Mar. 24, 2021) ..................................5, 12, 25

*Mausolf v. Babbitt*,
85 F.3d 1295 (8th Cir. 1996) .................................................. 35

*N.C. State Conf. of NAACP v. Berger*,
999 F.3d 915 (4th Cir. 2021) .................................................. 31

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) .................................................. 31

*Ordnance Container Corp. v. Sperry Rand Corp.*,
478 F.2d 844 (5th Cir. 1973) .................................................. 27

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) .................................................. 36

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .............................................*passim*

*Sierra Club v. Glickman*,
82 F.3d 106 (5th Cir. 1996) ........................................ 20, 22, 28

*Spangler v. Pasadena City Bd. of Ed.*,
552 F.2d 1326 (9th Cir. 1977) .................................................. 39

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) .............................................*passim*

*The Wilderness Society v. Haaland*,
1:22-cv-01871 (D.D.C. filed June 29, 2022) ........................................... 13

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ........................................................20, 30

*Utah Ass'n of Cntys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) .................................................. 31

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
295 F.3d 1111 (10th Cir. 2002) .................................................. 38

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ....................................................... 18, 40

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ..............................................................1, 17

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009)................................................................ 33

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Michigan*,
No. 21-1744, 2022 WL 2965614 (6th Cir. July 27, 2022) ...................... 31

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................... 24

**Statutes**

28 U.S.C. § 1291 ........................................................................................ 3

30 U.S.C. § 226(b)(1)(A) .......................................................................... 21

43 U.S.C. § 1332(3) .................................................................................. 21

43 U.S.C. § 1702(c) .................................................................................. 21

43 U.S.C. § 1732(a) .................................................................................. 21

**Other Authorities**

86 Fed. Reg. 7619 (Feb. 1, 2021) .............................................................. 4

87 Fed. Reg. 40,859 (July 8, 2022) .......................................................... 14

Fed. R. Civ. P. 24 ...........................................................................*passim*

## INTRODUCTION

This Court's precedent contains a "broad policy favoring intervention" that was not followed below. *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016).

This litigation arises out of a suit by oil and gas industry trade associations (the Industry Associations) that seeks, as its end goal, to make the federal government lease more of our nation's public lands and waters for oil and gas development. Their target is a policy that the Conservation Groups, appellants here, had long advocated for: a pause on new oil and gas leasing to allow the federal government to comprehensively review its oil and gas program. The Groups advocated for this policy because the federal government had repeatedly leased public lands and waters for oil and gas development without addressing the harmful effects of those actions on conservation interests. In response to these failures, the Groups often had to sue to ensure those interests would be assessed and addressed. The Associations' suit claims that this policy the Groups pushed for violates various federal statutes that govern the leasing of public lands and waters. And so, the Groups sought to intervene in this litigation to defend the federal government's ability to think before it acts.

The court below did not allow the Conservation Groups to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2). It concluded that

because the Federal Defendants planned to defend the policy at issue, and because the Groups wished to defend that policy too, the Defendants will adequately represent the Groups in this litigation.

That was wrong. This Court's precedents do not permit a court to mechanically deny intervention just because a proposed intervenor shares an existing party's goal of opposing the other side's claims (a fact that will usually, if not almost always, be true). Instead, its cases direct a court to ask whether any differences in an intervenor's underlying interests create the prospect that the relevant existing party's representation *"may* be inadequate," which is a "minimal" showing. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022).

The Conservation Groups made that showing. They established that their members' interests in this litigation do not align with the Federal Defendants' interests. The Defendants represent a broader set of interests when managing federal lands and waters under the statutes at issue here, including the interests of the Industry Associations themselves. The Groups showed that this misalignment creates real risk that the Defendants' litigation of this case may conflict with the Groups' interests. The Defendants might, for example, take a narrower view of their authority under the statutes or have a different view of the equities around the injunctive relief the Associations seek. The Groups also

showed that the potential for conflict in this litigation has already played out in related litigation challenging the same policy at issue here. Showing a potential for inadequate representation is a task that "present[s] proposed intervenors with only a minimal challenge," *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022), and the Groups more than met it here.

The court below also abused its discretion when denying the Conservation Groups' request for permissive intervention under Federal Rule of Civil Procedure 24(b). It made a legal error when it relied on its earlier, incorrect conclusion that the Federal Defendants will adequately represent the Groups' interests in this litigation. And it made a factual error, or misapplied the law to the record, when it hypothesized that the Groups *might* add new issues to the case, which in turn *might* delay the case, even though the only record evidence on this front is the Groups' promise *not* to do that.

This Court should reverse the District Court and allow the Conservation Groups to intervene as a matter of right or, in the alternative, permissively.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The denial of a motion to intervene as a matter of right is a final, appealable order. *See Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1017 (5th Cir. 2022). "[P]rovisional jurisdiction" exists over an appeal from the denial of permissive

intervention: If such a denial was not an abuse of discretion, the appeal from that denial is dismissed for lack of jurisdiction. *Id.* at 1017 n.2.

## STATEMENT OF THE ISSUES

1. Whether the Conservation Groups were entitled to intervene as a matter of right under Rule 24(a)(2) because the Federal Defendants' broad interests, including their need to balance competing interests when leasing public lands and waters for oil and gas development, showed that they might not adequately represent the Groups' narrower conservation-focused interests in this case.

2. Whether the District Court abused its discretion in denying permissive intervention.

## STATEMENT OF THE CASE

### A. The Industry Associations sue to force the Federal Defendants to lease federal lands and waters for oil and gas development.

Before this suit began, a related one was underway. Executive Order 14008 directed the Secretary of the Interior to pause new oil and gas leasing on public lands and offshore waters during a review of, and consideration of changes to, the federal leasing program. *See* Exec. Order 14008, § 208, <u>86 Fed. Reg. 7619</u>, 7624-25 (Feb. 1, 2021). Several States sued, alleging that the order amounted to a moratorium on new oil and gas leasing that violated the Mineral Leasing and Outer Continental Shelf Lands Acts. *See generally* Compl.,

*Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La. Mar. 24, 2021), Dkt. 1.  They

sought and received a preliminary injunction that prohibits implementation of

that pause.  *See* Order at 1-2, *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La. June

15, 2021), Dkt. 140.  The federal government appealed that decision, but did not

seek a stay pending appeal that would have preserved its authority to complete

a review of oil and gas leasing before holding more sales.[1]

The Industry Associations[2] then filed this suit in August 2021.  They raise

an overlapping set of claims[3] against an overlapping set of defendants,[4] in pursuit

---

[1] The defendants' appeal of that preliminary injunction is pending before
this Court in *Louisiana v. Biden*, No. 21-60505.

[2] The Associations are the American Petroleum Institute, American
Exploration & Production Council, Aries Marine Corporation, EnerGeo
Alliance, Independent Petroleum Association of America, International
Association of Drilling Contractors, National Ocean Industries Association,
Montana Petroleum Association, North Dakota Petroleum Council, Petroleum
Alliance of Oklahoma, Southeast Oil & Gas Association, Utah Petroleum
Association, Western States Petroleum Association, and Valveworks USA Inc.

[3] They raise an additional Outer Continental Shelf Lands Act claim and
raise claims under the Administrative Procedure, Federal Land Policy and
Management and National Environmental Policy Acts.  ROA.50-58.

[4] The Defendants are the U.S. Department of the Interior; Debra Haaland,
in her official capacity as Secretary of the Interior; the Bureau of Land
Management; Nada Culver, in her official capacity as Deputy Director of Policy
& Programs, Bureau of Land Management; Laura Daniel-Davis, in her official
capacity as Principal Deputy Assistant Secretary for Land & Minerals
Management; the Bureau of Ocean Energy Management; and Amanda Lefton,
in her official capacity as Director of the Bureau of Ocean Energy Management.
ROA.31.

of similar relief. The Industry Associations seek a declaratory judgment that the Federal Defendants acted unlawfully and injunctive relief that would "[c]ompel Defendants to proceed with lease sales . . . to the same extent as prior to Executive Order 14008" and "promptly adopt a new Five-Year Leasing Program for [Outer Continental Shelf] leasing." ROA.59.

That same month, the Department of the Interior began moving quickly towards new oil and gas leasing. It announced that it would start holding new lease sales on public lands in early 2022. ROA.196. It moved forward with an offshore lease sale in the Gulf of Mexico, Lease Sale 257, broadening the scope of that sale to cover one million acres more than it had previously proposed in late 2020—an area larger than Rhode Island. *Id*. It also stated that it would move forward on another sale, Lease Sale 258, off the Alaskan coast. *Id*.

**B.** **The Conservation Groups seek to intervene to defend the Federal Defendants' exercise of their authority to examine environmental impacts before proceeding with leasing decisions.**

The Conservation Groups[5] moved to intervene as defendants and protect their members' interests in addressing and minimizing the environmental harms

---

[5] The Groups are Healthy Gulf, Center for Biological Diversity, Citizens for a Healthy Community, Cook Inletkeeper, Defenders of Wildlife, Food & Water Watch, Friends of the Earth, Great Old Broads for Wilderness, Montana Environmental Information Center, Oceana, Inc., Sierra Club, The Wilderness Society, Valley Organic Growers Association, Western Organization of

caused by new oil and gas leasing.  The motion explained that the requirements to intervene as a matter of right were met and, in the alternative, why permissive intervention was appropriate.  The Industry Associations opposed the motion; the Federal Defendants took no position.  ROA.1522.

The Conservation Groups first explained why they met their "minimal burden," *La Union del Pueblo Entero*, 29 F.4th at 309 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014)), under the four-factor test for intervention as a matter of right, *see* Fed. R. Civ. P. 24(a)(2).

*Timing*.  The Conservation Groups sought intervention quickly, ten weeks after the Industry Associations sued.  This was before the Federal Defendants responded, and before the court set a case management schedule.  Because the motion came in the earliest stages of the case, the timing of the motion did not prejudice any party.  ROA.199-200.

*Legally Protectable Interest*.  The Conservation Groups described their interests in the oil and gas leasing program that this litigation is about, supported by declarations.  The Groups and their members have cognizable recreational, aesthetic, and research interests in the lands and waters that these leases threaten.  ROA.202.  For example, oil and gas development on public lands and

---

Resource Councils, Western Watersheds Project, and WildEarth Guardians. ROA.164.

waters has harmed and will harm Alaskan Native members' harvest and hunting grounds, ROA.218, a member's photography and recreational trips in the Western United States, ROA.229, and members' observation and research of marine life in the Gulf of Mexico, ROA.246. The Groups also have an interest in this suit because it challenges the Federal Defendants' authority to do just what the Groups have long asked for: conduct a comprehensive review of the oil and gas leasing program before issuing new leases. The Groups advocated for this review in light of systemic deficiencies in the federal government's actions in carrying out this program, such as the failure to adequately consider and account for harms to conservation interests. ROA.201, ROA.221, ROA.236, ROA.264.

*Impairment*. The Conservation Groups next explained why these interests will be impaired if the Industry Associations' suit succeeds. Their suit asks for injunctive relief that would "[c]ompel" the Federal Defendants "to proceed with lease sales" and "to promptly adopt a new Five-Year Leasing Program for [Outer Continental Shelf] leasing." ROA.59. That outcome would lock up public lands and waters for oil and gas development, without the kind of review that could mitigate the harmful effects of that development. ROA.203. The suit also seeks a declaration that a pause for a review of the leasing program is "beyond [the Defendants'] statutory authority under the" Mineral Leasing Act,

Mineral Leasing Act for Acquired Lands, and Outer Continental Shelf Lands Act. ROA.59. That declaration would narrow the options that the federal government has to reduce the harmful effects of lease sales. ROA.204. And this suit aims, at bottom, to undermine a policy that the Groups long advocated for, and achieved. ROA.203.

*Adequacy of Representation.* The Conservation Groups then outlined how the Federal Defendants' representation of the Groups' interests "*may* be inadequate" in this litigation. ROA.205 (quoting *Wal-Mart*, 834 F.3d at 569).

First, the Conservation Groups represent a narrower set of interests than the Federal Defendants' when it comes to the main relief the Industry Associations seek: to force the leasing of public lands and waters for oil and gas development. The statutes relevant here tell the Defendants to take into account conservation (the Groups' interest) but also others (including goals relevant to the Associations' oil and gas development interests, like national energy needs). Because the Defendants must accommodate many interests, not just the Groups' interests, they may have different views on the scope of federal authority under those statutes, or on the appropriate scope of injunctive relief. ROA.208-209.

Second, the Conservation Groups showed that the possibility that these different interests will lead to different litigation positions is not hypothetical; it has happened before. For years, the Groups have had to challenge the Federal

Defendants' decisions to lease public lands and waters for oil and gas development because they failed to sufficiently assess or address the environmental effects of those decisions. ROA.210-211. One of those, for example, arose after the preliminary injunction issued in the related *Louisiana* litigation, *see supra* at 4-5. The federal government proceeded to hold the expanded Lease Sale 257 in the Gulf of Mexico, and four of Groups challenged that action because the government again had not sufficiently considered the sale's environmental effects.[6]

And third, the Conservation Groups noted that the Federal Defendants' commitment to the policy being challenged in this suit—a pause on leasing pending the completion and implementation of a comprehensive review of the oil and gas leasing program—has waned. In the related *Louisiana* litigation, the federal government did not seek a stay pending appeal that would have allowed it to keep that policy in place while the preliminary injunction appeal proceeded. Nor did it move quickly to appeal, or to expedite the appeal. ROA.1241.

Moreover, after the preliminary injunction issued, the federal government expanded the scope of Lease Sale 257. It added one million acres to that sale

---

[6] The court vacated Lease Sale 257, and that decision has been appealed. *See Friends of the Earth v. Haaland*, Civ. A. No. 21-2317 (RC), 2022 WL 254526 (D.D.C. Jan. 27, 2022), *appeal docketed*, No. 22-5036 (D.C. Cir. Feb. 11, 2022).

beyond what it had originally proposed *before* the injunction. ROA.1243. These actions did not protect the Conservation Groups' interests, leading them to challenge the sale to avoid its harmful consequences. *See supra* at 10 & n. 6.

As for permissive intervention, the Conservation Groups explained why it was warranted. Their defense of the Federal Defendants' action and authority shares "a question of law or fact" with the Industry Associations' suit. ROA.212 (quoting *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003)). And their expertise in the application and scope of the federal leasing statutes, history with the policy at issue, and representation of relevant stakeholders, would all aid in the resolution of this suit. ROA.213.

## C. The Magistrate Judge denies the Conservation Groups' motion.

The District Court referred the motion to the Magistrate Judge, who denied it. ROA.403, ROA.1522. The Magistrate Judge agreed that the motion was timely, that the Conservation Groups and their members have an interest in this suit, and that this suit could impair those interests. ROA.1525-1526. But she denied intervention as of right on adequacy of representation grounds, concluding that the Federal Defendants "adequately represented" those "interests in maintaining the leasing pause." ROA.1529.

To reach her conclusion, the Magistrate Judge relied on a presumption of adequate representation. Under that presumption, if a "would-be intervenor has

the same ultimate objective as a party to the lawsuit," it "must show adversity of interest, collusion, or nonfeasance" by "the existing party to overcome the presumption." *Texas v. United States*, 805 F.3d 653, 661-662 (5th Cir. 2015) (internal quotations omitted) (cited at ROA.1527). The Magistrate Judge noted that the Federal Defendants and the Conservation Groups shared the objective of "defending the lease pause." ROA.1528. Because the Magistrate Judge assumed the Defendants had not "abandoned the ultimate objective of pausing leasing in accordance with Section 208 of Executive Order 14008 or other law," she concluded that the presumption applied and had not been overcome. ROA.1529.

After invoking the "ultimate objective" issue, the Magistrate Judge did not discuss whether that presumption had been rebutted. The Conservation Groups explained how their narrower conservation interests could conflict—that is, be adverse to—the broader interests that the Federal Defendants represent during this litigation. But the Magistrate Judge did not address these arguments.[7]

---

[7] The Magistrate Judge noted that the District Court had denied a motion by some Conservation Groups to intervene in the related *Louisiana* litigation and that the decision therefore "restate[d] and adopt[ed] much of the reasoning" from that order. ROA.1524. The *Louisiana* decision similarly rested on a "same ultimate objective" conclusion, without addressing the Conservation Groups' arguments about why they had rebutted any presumption of adequate representation. *See* Order at 5-7, *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La. May 10, 2021), Dkt. 111.

As to permissive intervention, the Magistrate Judge denied it for two reasons.  First, she repeated the conclusion that the Defendants "adequately represent [the] Conservation Groups' ultimate objective."  ROA.1530.  And second, she stated that "to the extent that the Conservation Groups are advocating for positions not at issue in the proceeding, intervention could expand the case . . ., potentially increasing costs and delaying" it.  ROA.1530.

The Magistrate Judge then invited the Conservation Groups "to request amicus curiae status" at some point during the litigation to address "the constitutional and statutory authority issues."  ROA.1530.

### D.   The District Court adopts the Magistrate Judge's ruling.

The Conservation Groups appealed the ruling to the District Court.  In doing so, the Groups noted that the Federal Defendants had—since the initial briefing on intervention—scheduled a series of significant lease sales for oil and gas development on public lands, further demonstrating that they do not adequately represent the Group's interests.  ROA.1549.[8]  They also explained

---

[8] These lease sales have since been challenged by several of the Conservation Groups, based on the federal government's failure to adequately assess the environmental impacts of the sale.  *See Dakota Res. Council v. U.S. Dep't of the Interior*, No. 1:22-cv-01853-CRC (D.D.C. filed June 28, 2022); *The Wilderness Society v. Haaland*, 1:22-cv-01871 (D.D.C. filed June 29, 2022).

that the failure to address whether any presumption of adequate representation had been rebutted was clearly an error under this Court's precedent.  ROA.1553.

The District Court affirmed in a one-page, unexplained order. ROA.1568.[9]

This appeal followed.  ROA.1569.[10]

## SUMMARY OF THE ARGUMENT

This Court should reverse the decision below and allow the Conservation Groups to intervene in this litigation as a matter of right or, in the alternative, permissively.

I. The Conservation Groups meet the four "minimal" requirements for intervention of right in Rule 24(a)(2).  *Brumfield*, 749 F.3d at 344 n.2, 345.  The court below correctly recognized that the Conservation Groups meet the first three requirements.  Their motion was timely, they have an interest in this

---

[9] Since the District Court's order, the Federal Defendants have taken further steps toward opening up public waters to leasing.  *See* Notice of Availability of the 2023–2028 National Outer Continental Shelf Oil and Gas Leasing Proposed Program and Draft Programmatic Environmental Impact Statement, 87 Fed. Reg. 40,859 (July 8, 2022) (proposing a five-year plan under the Outer Continental Shelf Lands Act that "offers up to ten potential sales in the Gulf of Mexico . . . and one . . . in the northern portion of the Cook Inlet").

[10] To avoid the risk of being deprived of a meaningful chance to participate in the district court proceedings while this appeal is pending, the Conservation Groups appealed eight days after the District Court's order and moved to expedite this appeal.  *See* Mot. To Expedite (June 16, 2022), Doc. 516359824. Their motion was denied.  *See* Order (June 17, 2022), Doc. 516361167.

litigation because they represent members who are harmed by oil and gas development on public lands and waters, and this litigation could impair those interests because it seeks to undo a policy that addresses that harm and constrain the federal government's future discretion to address that harm.

The court below rejected intervention based on the fourth requirement—of inadequate representation—but this was wrong. The Industry Associations' suit alleges that the Federal Defendants have not enabled oil and gas leasing on public lands and waters at a sufficient pace, or in sufficient amounts. When interpreting and implementing the statutes relevant to the Industry Associations' claims here, the Defendants represent a broad set of interests held by the varied stakeholders in the leasing program, including those of the Industry Associations. The Conservation Groups "do not" share all of these interests; "their only concern" is their members' conservation-focused interests. *Id.* at 346.

This misalignment of interests means that the Federal Defendants may not adequately represent the Conservation Groups' interests. The Defendants' broader interests may lead them to take a different view than the Groups would of their authority under the relevant statutes, of what equitable remedies may be appropriate, and of what to do if there is an adverse judgment. Indeed, these potential conflicts have been the reality in related litigation. For example, the Groups have had to bring challenges after the Defendants exercised their

authority under these statutes in a way that did not account for, or adequately consider, the Groups' conservation-focused interests. And in the related *Louisiana* litigation, the federal government declined to take steps, such as seeking a stay pending its appeal of the preliminary injunction, that would have protected those same interests. Identifying a relevant misalignment of interests "is all that the rule requires," and the Groups did just that. *Id.*

The court below erred twice to reach the opposite conclusion.

First, it applied a presumption of adequate representation, presuming that the Federal Defendants would adequately represent the Conservation Groups' interests simply because both share the bottom-line goal of "defending the lease pause" against the Industry Associations' challenge. ROA.1528. This Court's precedents do not support raising the minimal burden under Rule 24(a)(2) in this way merely because the potential intervenor and the defendant both want to defeat a plaintiff's suit. Instead, they recognize that a risk of inadequate representation exists where the government's representation of broader interests could affect how it conducts the litigation. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (not applying a presumption of adequate representation in these circumstances). That risk exists here, so no presumption applies.

Second, the court below failed to address the Conservation Groups' arguments as to why, even if a presumption of adequate representation applies, they had rebutted it. This Court's cases are clear: A potential intervenor can "overcome the presumption" by showing, as relevant, "adversity of interest between themselves and the" defendant. *Texas*, <u>805 F.3d at 662</u> (citation omitted). The Groups did just that by identifying ways, like those just mentioned, that the Federal Defendants' broader interests might conflict with the Groups' conservation-focused interests as the Defendants litigate this case. "Given the broad policy favoring intervention in [this Court's] precedent," that was more than enough to meet their minimal burden under Rule 24(a)(2). *Wal-Mart*, <u>834 F.3d at 569</u>.

**II.** In the alternative, the court below abused its discretion when it denied permissive intervention. Rule 24 favors intervention, and a court should grant intervention "where no one would be hurt and greater justice could be attained." *Espy*, <u>18 F.3d at 1205</u> (quoting *McDonald v. E.J. Lavino Co.*, <u>430 F.2d 1065, 1074</u> (5th Cir. 1970)). The court below contravened this directive when it denied permissive intervention.

Each of the two reasons the court below offered for denying permissive intervention amounts to an abuse of discretion. It first relied on its earlier conclusion that the Federal Defendants will adequately represent the

Conservation Groups' interests in this litigation. Because that earlier conclusion "relie[d] on erroneous conclusions of law," relying on it to deny permissive intervention was an abuse of discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)). The court below then offered a few hypotheticals: *If* the Groups "advocat[ed] for positions not at issue," *then* that "*could* expand the case . . ., potentially increasing costs and delay[]." ROA.1530 (emphasis added). But the Groups stated unequivocally that they would not raise new claims or other positions not at issue. ROA.213-214. Because the record does not support the court below's speculation, relying on it also was an abuse of discretion. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 310 (stating that if a court "relies on clearly erroneous factual findings" or "misapplies the law to the facts," it abuses its discretion).

## STANDARD OF REVIEW

This Court reviews the denial of intervention as a matter of right under Rule 24(a) de novo and reviews the denial of permissive intervention under Rule 24(b) for an abuse of discretion. *See Field*, 35 F.4th at 1017 & n.2.

# ARGUMENT

## I. The Conservation Groups Were Entitled To Intervention As A Matter of Right.

Rule 24(a) governs intervention as of right and has four requirements. As relevant here, a "court *must* permit anyone to intervene" if (1) the motion is timely; (2) they claim "an interest relating to the property or transaction that is the subject of the action"; (3) the "action may as a practical matter impair or impede [their] ability to protect [their] interest"; and (4) "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). A potential intervenor's burden on this front is "minimal." *Espy*, 18 F.3d at 1207. Rule 24 favors intervention, and a court should grant it, "where no one would be hurt and greater justice could be attained." *Id.* at 1205 (quoting *McDonald*, 430 F.2d at 1074); *see also Entergy Gulf States La. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) ("The rule is to be liberally construed, with doubts resolved in favor of the proposed intervenor." (internal quotations and citation omitted)).

The court below correctly recognized that the Conservation Groups meet the first three requirements for intervention as of right but went wrong when it denied intervention based on the fourth. That requirement "present[s] proposed intervenors with only a minimal challenge." *Berger*, 142 S. Ct. at 2203. Because intervention occurs early in a case, the potential intervenor need only show that

the relevant existing party's representation of its interests " 'may be' inadequate," not that it is certain to be inadequate. *Espy*, <u>18 F.3d at 1207</u> (quoting *Trbovich v. United Mine Workers of Am.*, <u>404 U.S. 528, 538</u> n.10 (1972)). Representation may be inadequate—making intervention appropriate—when a potential intervenor's interests "may not align precisely," *Brumfield*, <u>749 F.3d at 345</u>, or are merely "related, but not identical," *Trbovich*, <u>404 U.S. at 538</u>.

### A. The Conservation Groups met their minimal burden to show the possibility of inadequate representation.

The Conservation Groups showed that the Federal Defendants may not adequately represent their interests in this litigation. The Industry Associations' suit is about the Defendants' authority under laws that require them to manage public lands and waters by considering multiple, sometimes mutually exclusive potential interests, such as conservation and resource extraction interests. The Defendants' decisions in this litigation will reflect their balancing of all of those interests. The Groups represent just one of them. The misalignment of interests means that the Defendants may not adequately represent the Groups' interest. *See, e.g.*, *Sierra Club v. Glickman*, <u>82 F.3d 106, 110</u> (5th Cir. 1996) (per curiam) (concluding that because the Department of Agriculture must represent the broad public interest, "[f]or this reason alone," its interests and those of farmers seeking to intervene "will not necessarily coincide").

The court below erred twice over when it nevertheless concluded that the Conservation Groups did not meet the adequate representation requirement. First, it improperly raised the Groups' burden by applying a "same ultimate objective" presumption of adequate representation that does not apply here. And second, even if this presumption applies, the Groups rebutted it, and the court below erred in not addressing the Groups' arguments on this front.

### 1. The Conservation Groups' interests are not aligned with the Federal Defendants' interests.

The Industry Associations' suit is, at bottom, about the scope of the Federal Defendants' authority under statutes that call for the Defendants to represent—and balance—competing interests, such as recreational uses, national energy needs, and more.[11] Conservation interests—those that the Groups seek to represent—are just some of these competing interests. When

---

[11] *See* 30 U.S.C. § 226(b)(1)(A) (Mineral Leasing Act, "Lease sales shall be held . . . if the Secretary of the Interior determines such sales are necessary."); 43 U.S.C. § 1332(3) (Outer Continental Shelf Lands Act, stating that these lands are "a vital national resource reserve held . . . for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards . . . consistent with the maintenance of competition and other national needs"); 43 U.S.C. § 1732(a) (Federal Land Policy and Management Act, directing the Secretary of the Interior to "manage the public lands under principles of multiple use and sustained yield"); *see also id.* § 1702(c) (defining "multiple use" to balance needs "including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values").

interpreting their authority under these statutes, when taking a position on the scope of any appropriate equitable relief in this suit, and when deciding how to respond to a judgment, the Defendants' decisions will thus reflect these varied interests. That creates an inherent risk that the Defendants' broad, conflicting interests will not be aligned with the Groups' narrower, conservation interests during this litigation. *See Glickman*, 82 F.3d at 110. That risk of conflict is enough to meet the minimal burden of showing a potential for inadequate representation that supports intervention. *See, e.g.*, *Espy*, 18 F.3d at 1207 (concluding that the agency "represent[s] the broad public interest, not just the economic concerns of the timber industry" and based on "the minimal burden," concluding "that [its] representation of the intervenors' interest is inadequate").

The Industry Associations have argued as much before this Court when seeking to intervene to defend a government action that they support. For example, the American Petroleum Institute (one of the Industry Associations) successfully moved to intervene in this Court to defend against a petition for review of a Clean Water Act permit issued by the Environmental Protection Agency. *See* Order at 1, *Ctr. for Biological Diversity v. EPA*, No. 18-60102 (5th Cir. Mar. 28, 2018), Doc. 514406602.[12] Citing many of the cases just discussed,

---

[12] Other examples abound. ROA.1240-1241 (compiling them).

API's motion to intervene argued its general alignment with the federal respondents' in "opposing Petitioners' ultimate request for relief" was not dispositive. ROA.1279. What was dispositive, API told this Court, was that the EPA's "obligation is to represent the broad public interest, not just the interests of [API's] members," so their "views may diverge regarding the proper implementation of" the Clean Water Act. ROA.1278-1279.

The same is true here. Yes, the Federal Defendants and Conservation Groups both oppose the Associations' suit. But even so, "their interests may not align precisely," *Brumfield*, 749 F.3d at 345.

This misalignment stems from the nature of the Industry Associations' suit. It challenges the Federal Defendants' authority to put new leases on hold to comprehensively reassess the nation's oil and gas leasing program. The Groups view this pause as required to address the government's habitual failure to assess and consider conservation interests before making leasing decisions. But the Defendants may not share that view, or may not wish to dredge up this history of their failures. As a result, they may defend the policy at issue based on their discretion, full stop.[13] The Groups' interest in ensuring that the

---

[13] Indeed, this summarizes the federal government's defense on the merits in the related *Louisiana* litigation. Opening Br. at 25-38, *Louisiana v. Biden*, No. 21-30505 (5th Cir. Nov. 16, 2021), Doc. 516096201.

government does not make significant oil and gas leasing decisions without addressing conservation interests may thus not be represented without the Groups' participation in the case.  *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (noting that a statute's requirement to take considerations "into account does not mean giving them the kind of primacy that the [interested person] would give them" (internal quotations omitted)).

The potential for misalignment also stems from the fact that the Industry Associations seek a permanent injunction.  ROA.59.  Whether that relief is appropriate turns, in part, on the relative equities at stake.  *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).  In general, the Federal Defendants represent the full, conflicting interests of the public, including the Industry Associations.  As a result, they may take a different view than the Conservation Groups of the conservation harms that flow from the relief that the Associations seek, or of the appropriate injunctive relief—if any—given those harms.[14]

The federal government's actions after the preliminary injunction was issued in the related *Louisiana* litigation prove the point.  That injunction

---

[14] The federal government's appeal of the preliminary injunction in the related *Louisiana* litigation shows how its representation of broader interests may cause it to inadequately represent the Conservation Groups' narrower interests. Its appellate brief did not discuss *any* conservation harms when arguing that the equitable considerations did not support injunctive relief.  *See* Opening Br. at 51, *Louisiana v. Biden*, No. 21-30505 (5th Cir. Nov. 16, 2021), Doc. 516096201.

prohibited the federal government from implementing a nationwide pause in leasing under Executive Order No. 14008. *See supra* at 4-5. The government's response shows that it is willing to accept the conservation harms associated with the injunctive relief that the Industry Associations seek, in a way that the Conservation Groups are not. First, it did not seek to stay the preliminary injunction, which would have left the pause on new oil and gas leases of public lands and waters in place pending the appeal. *See supra* at 5. That is, the Federal Defendants' broader interests—for example, in their stances before a court across all cases, or competing private interests—won out over the conservation interests the Conservation Groups represent. Instead, the Federal Defendants carried out and proposed lease sales that go far beyond what that preliminary injunction arguably required. *See Espy*, 18 F.3d at 1208. That injunction did not require any specific lease sale, or sales of any specific size.[15] And yet the Federal Defendants, for example, tacked on an area the size of Rhode Island to Lease Sale 257 in the Gulf of Mexico beyond what they had proposed before the *Louisiana* litigation. And they approved the sale of leases on 140,000 acres of public lands for oil and gas development in June of this year.[16] Most recently,

---

[15] *See* Order at 1-2, *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La. June 15, 2021), Dkt. 140.

[16] In both of these cases, the Federal Defendants acted without sufficient consideration of the harmful conservation consequences that would result.

they proposed a five-year offshore leasing program under the Outer Continental Shelf Lands Act (an action not at issue in the *Louisiana* litigation) that may include as many as eleven new lease sales. *See supra* at 14 n.9. The proposal goes halfway down the road to the exact relief the Industry Associations seek in this suit, without any need for an order from the court below. ROA.59 (requesting an order requiring the Federal Defendants to "promptly adopt a new Five-Year Leasing Program for [Outer Continental Shelf] leasing").

In sum, the District Court ran afoul of this Court's precedents when it raised the minimal burden for intervention simply because the Conservation Groups and Federal Defendants share a bottom-line goal of defending against the Industry Associations' suit. The Federal Defendants' interests in this litigation are broader than—that is, not identical to—the Conservation Groups' interests. That misalignment creates a clear risk that their interests will come into conflict as the Federal Defendants pursue that bottom-line goal. And that misalignment is all that a potential intervenor needs to show to meet Rule 24(a)(2)'s inadequate representation requirement.

---

Several of the Conservation Groups have sued to challenge those actions, precisely because the federal government's actions harmed their interests. *See supra* at 21 & n.11.

### 2. The court below erred in applying the "same ultimate objective" presumption of adequate representation.

The court below avoided this conclusion by requiring the Conservation Groups to rebut a presumption of adequate representation that does not apply.

This Court has held that "when the would-be intervenor has the same ultimate objective as a party to the lawsuit," a presumption of adequate representation applies that the potential intervenor must rebut. *Brumfield*, 749 F.3d at 345 (quoting *Edwards*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc)). This presumption applies when there is "unity in all objectives" between a potential intervenor and an existing party. *Id.* at 346. This Court has thus found that a potential intervenor had the same ultimate objective as an existing party where it was a member of an association that was a party to the suit, *see Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987), or when it was owed the proceeds of a contract an existing party had sued to enforce, *see Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973).

But this Court has *not* endorsed the reductive version of the same-ultimate-objective presumption that the court below applied. Under the reasoning below, the presumption applied merely because the Conservation Groups share the Federal Defendants' objective of "defending the lease pause." ROA.1528. But where—as here—there is a clear misalignment between an existing party's interests and a potential intervenor's interests, this Court has found inadequate

representation without resort to any presumption. And it has done so even when an existing party and potential intervenor share the top-line goal of winning the lawsuit. *See, e.g., Glickman*, 82 F.3d at 110 (concluding that the potential intervenors met their burden to show inadequate representation "even though" they and the agency "share common ground" in defending the agency's action).

*Sierra Club v. Espy* provides one example. There, the district court entered a preliminary injunction barring certain timber sales after environmental groups sued the U.S. Forest Service to challenge a forest management plan. *See* 18 F.3d at 1204. The Service's response went beyond that preliminary injunction: It announced that it would refrain from all timber sales of that type, not just the specific sales at issue in the case. *See id.* Trade associations then sought to intervene, and this Court reversed the denial of intervention.

*Espy* did not apply a presumption of adequate representation. It rejected the argument that the government would adequately represent the trade associations' interest—which was in defending the Service's action to avoid the stare decisis effect an adverse ruling might have on future sales—because its interest was "essentially identical." *Id.* at 1207. It instead held that the associations had met their "minimal burden" to show inadequate representation by pointing to the decision to apply the preliminary injunction broadly. *Id.* at

1208.  The Service's decision showed that it "must represent the broad public interest, not just the economic concerns of the timber industry."  *Id.*

*Brumfield v. Dodd* reiterated that a presumption of adequate representation does not apply simply because an intervenor seeks to join a government's defense of its policy.  There, the United States sought to enjoin a Louisiana voucher program, parents whose children were receiving those vouchers moved to intervene to defend the program alongside Louisiana, and this Court reversed the denial of intervention.  *See* 749 F.3d at 340-341.  The parents and Louisiana shared the same bottom-line goal.  *See id.* at 345 ("[B]oth the state and the parents vigorously oppose[d] dismantling the voucher program.").

Even so, this Court held that the "presumption d[id] not apply" because the parents' interests and Louisiana's "interests may not align precisely."  *Id.*  The State had "many interests in th[e] case," like its relationship with the United States and courts; the parents' only interest was "keeping their vouchers."  *Id.* at 346.  Though it was not certain that Louisiana's broader interests would "in fact result in inadequate representation, but surely they might," which was "all that the rule requires."  *Id.*  The parents thus met Rule 24(a)(2)'s requirements and could intervene.

These decisions follow the Supreme Court's intervention precedents.  In *Trbovich v. United Mine Workers of America*, the Supreme Court found a risk of

inadequate representation because the private intervenor's narrow interests did not align with the broad public interest the government represented. There, a union member's complaint led the Secretary of Labor to sue to set aside a union election, and he then moved to intervene in that suit alongside the Secretary. *Trbovich*, 404 U.S. at 529-530. "At a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned." *Berger*, 142 S. Ct. at 2203-04. But they "were not 'identical,'" because the member's interest was narrower: He wanted to set aside the election, but "the Secretary also had to bear in mind broader public-policy implications." *Id.* at 2204 (quoting *Trbovich*, 404 U.S. at 538). The Supreme Court did not discuss, much less apply a presumption of adequate representation, in *Trbovich*.[17]

Other circuits likewise reject an approach under which a presumption of adequate representation is presumed simply because a potential intervenor shares an existing party's bottom-line goal. As the D.C. Circuit explained, when assessing a potential intervenor's motion to intervene alongside a government defendant, "[g]ood faith disagreement . . . may understandably arise out of the

---

[17] Recently, in *Berger*, the Supreme Court again chose not to embrace any presumption of adequate representation. *See* 142 S. Ct. at 2204 (noting that some "lower courts have suggested that a presumption . . . remains appropriate in certain classes of cases" but that it did not need to "decide whether a presumption . . . might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance").

differing scope of [the government's and intervenor's] interests," such as disagreement "about what the law requires." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). For this reason, that court will reverse a district court who denies intervention just because a potential intervenor and a government defendant both want a plaintiff's claims to fail. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[B]y treating general alignment as dispositive, the district court went against the weight of authority in this Circuit."); *see also Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation").[18]

The rule in the decision below—under which a presumption of adequate representation applies merely because a potential intervenor seeks to join an existing defendant—is not just out of step with this Court's cases, it cannot be

---

[18] *But see Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Michigan*, No. 21-1744, 2022 WL 2965614, at *5 (6th Cir. July 27, 2022) (applying the presumption where a potential intervenor and government defendant shared an objective of "defending the zoning ordinances" but finding it rebutted); *N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 931 (4th Cir. 2021) (applying the presumption where potential intervenor and government defendants were both "seeking to uphold [a law's] legality"), *rev'd sub nom. Berger*, 142 S. Ct. at 2206 (2022).

squared with the text of Rule 24.  That rule favors intervention:  A court "*must* permit *anyone* to intervene" if their timely motion shows they have an interest in the suit that may be impaired, "unless" an existing party represents that interest. Fed. R. Civ. P. 24(a)(2) (emphasis added).  Yet, under the decision below, a presumption of adequate representation—and thus a higher burden of proof— would seem to always apply.  That is because any potential intervenor who seeks to intervene alongside an existing party will share that party's goal of defeating the other side's position.  Rule 24(a)(2) does not support that outcome.

### 3. If the presumption applies, the Conservation Groups rebutted it.

The court below applied the "same ultimate objective" presumption of adequate representation but did not address any of the arguments for why, even if it applies, the Conservation Groups rebutted it.  A potential intervenor can rebut the presumption by showing, as relevant here, "adversity of interest" with the relevant existing party.  *Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005).[19]  If a potential intervenor's "interests diverge from the [relevant existing party's] interests in a manner germane to the case," adversity exists.  *Id.* at 662.

---

[19] There are other ways of rebutting the presumption, including "collusion, or nonfeasance" by "the existing party."  *Texas*, 805 F.3d at 661-662; *see also id.* at 662 n.5 (noting that it is "unlikely that there are three and only three circumstances that would make representation inadequate").

The Conservation Groups showed how their narrower conservation interests diverge from the Federal Defendants' broader interests in ways relevant to this litigation.

The Federal Defendants' interests and the Conservation Groups' interests do diverge here, as already discussed. The Industry Associations' suit alleges that the Defendants have not enabled oil and gas leasing on public lands and waters at a sufficient pace, or in sufficient amounts. The Defendants must take into account a broad set of interests, held by a broad set of stakeholders when deciding how and when to lease public lands and waters for oil and gas development. *See supra* at 21 & n.11. The Groups represent a narrower set of interests: their members' conservation-based interests. *See supra* at 7-8 (describing these interests). This is a plain divergence of interests. *See Texas*, 805 F.3d at 663 (reaching this conclusion based on an analogous mismatch between the federal government's broad interests when setting immigration policy and the narrower interests of beneficiaries of the DAPA program).[20]

---

[20] *See also, e.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) ("the intervenors showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent . . . the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest" (internal quotations and citation omitted)); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("when an agency's views are necessarily colored by its view of the public

That divergence of interests is relevant to this litigation because there are "particular way[s]" those interests may conflict in this litigation. *Id.*[21]

The Federal Defendants' motion to dismiss the Industry Associations' suit shows that their divergent interests may lead to disagreements over "how to carry out the ultimate objective," *La Union del Pueblo Entero*, 29 F.4th at 308, of defending against the suit. That motion raises threshold issues, and one of those—a statute of limitations argument—relies on an argument that the Industry Associations previously raised *against* the Conservation Groups. ROA.1376-1377. Had they been permitted to intervene, the Groups would likely not have raised that argument, or would have countered it. This shows how the Defendants' broader interests—here, its general desire to avoid suits challenging its actions—may conflict with the Conservation Groups' interests when the Federal Defendants make decisions about how to defend this suit. *See Texas*, 805 F.3d at 663 ("the Government has an institutional interest in shielding its actions . . ., whereas the Jane Does' interest is in working and providing for their families"); *see also Entergy Gulf States La., L.L.C.*, 817 F.3d at

---

welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light").

[21] The explanation of the misalignment between the Federal Defendants' broader interests and the Conservation Groups' narrower, conservation-focused interests in Section I.A.1 also shows that the Conservation Groups rebutted the presumption.

205 (finding that EPA's agreement to stay a suit seeking to block the disclosure of records under FOIA, and to an order enjoining release of those records during that stay, showed adversity where the potential intervenor had requested the records under FOIA and had an interest in receiving them).

Their divergent interests may also lead the Conservation Groups and Federal Defendants to take different positions on the Defendants' obligations under the statutes relevant to this litigation. These statutes, as mentioned *supra* at 21 & n.11, refer to interests beyond the Groups' conservation-focused interests. The Groups have previously challenged Defendants' actions under these statutes precisely because they interpreted and carried out their authority in a way that did not adequately consider or address those conservation-focused interests. ROA.210-211 (providing examples of prior cases). The Defendants' past "reluctance" to protect the Groups' interests makes their "ability to adequately represent" the Groups here "all the more suspect." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (finding inadequate representation where a potential intervenor sought to defend the agency's decision to list an owl as a protected species under the Endangered Species Act and the agency had made the listing only after the potential intervenor sued); *see also Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (reversing the denial of intervention of an environmental group seeking to

defend a regulation where its prior suits were "probably the reason for the current regulations"). In other words, the Defendants' and Groups' previous disagreements about Defendants' obligations under these statutes provide reason to believe that they may disagree in this litigation too.

The Federal Defendants' and Conservation Groups' divergent interests may also cause them to have divergent views on the appropriate scope of equitable relief. *See supra* at 24. The Industry Associations' suit seeks injunctive relief: an order that would "[c]ompel Defendants to proceed with lease sales . . . to the same extent as prior to Executive Order 14008" and "promptly adopt a new Five-Year Leasing Program for [Outer Continental Shelf] leasing." ROA.59. Whether any such relief is appropriate will turn on, among other things, whether "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Conservation Groups may, based on their narrower interests, have a unique view on whether the public interest supports injunctive relief and may need to support their view by introducing evidence into the record that the Federal Defendants would not. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (reversing a denial of intervention because, among other reasons, despite a shared goal of defending the regulation at issue, "the interests may diverge at points involving . . . the balance of hardships . . . and the public interest factor").

For similar reasons, their divergent interests may cause the Federal Defendants and Conservation Groups to disagree over how to proceed post-judgment. *See Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 ("It is apparent the Commission and Crossroads hold different interests, for they disagree about . . . post-judgment strategy."). The potential conflict has already played out in the related *Louisiana* litigation. There, the federal government's choice not to seek a stay of the preliminary injunction pending appeal risked harming the Groups' conservation-based interests. The harm materialized when the government then proceeded to hold expansive lease sales of public lands and waters for oil and gas development, forcing some of the Groups to challenge those sales to protect their interests. *See supra* at 10. In this case too, the Federal Defendants' broader interests—such as considerations of the federal government's litigation positions across all of its cases—may cause it to make a choice that does not protect the Groups' interests. *See Berger*, 142 S. Ct. at 2205 (finding that state legislatures with an interest in defending a state law met the inadequate representation requirement where, among other things, an existing party "declined to seek a stay" of a preliminary injunction that barred enforcement of that law).

In sum, the Conservation Groups established a "lack of unity in all objectives" between them and the Federal Defendants, which "is sufficient to

demonstrate that the representation may be inadequate" under Rule 24(a)(2). *Brumfield*, 749 F.3d at 346.

**B.** **The possibility that a party seeking to intervene might be allowed to file an amicus brief is irrelevant to the Rule 24(a) inquiry.**

The Industry Associations' passing suggestion below that the possibility of amicus participation cuts against intervention as of right lacks merit. ROA.1227. By its terms, Rule 24(a) looks only to whether "*existing parties* adequately represent" a potential intervenor's interests. Fed. R. Civ. P. 24(a)(2) (emphasis added). It does not direct courts to assess what a potential intervenor might be able to do if permitted to participate as an *amicus*. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("the right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)" (citation omitted)).

This Court has already recognized that the only relevant question is whether Rule 24(a)'s requirements are met in *Edwards v. City of Houston*. There, groups of employees sued the City of Houston under Title VII of the Civil Rights Act of 1964, and other groups of employees moved to intervene to contest a consent decree. *See Edwards*, 78 F.3d at 990-991. In opposing intervention, the plaintiffs argued that the would-be intervenors had functionally received the benefits of intervention already, through their participation in a fairness hearing over the decree. *See id.* at 991, 995-996. This Court held that participation was

irrelevant. "The question of intervention is to be judged pursuant to the principles established under Rule 24." *Id.* at 998; *see also Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

This approach makes sense. A party can fully participate in the litigation—and thus fully protect its interests—in a way that an amicus cannot. For example, a party can address errors in the compilation of the administrative record, move for summary judgment, develop a factual record relevant to injunctive relief, and protect its interests post-judgment, such as through an appeal. *Cf. Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 (discussing these stages in a case with respect to adequacy of representation). The possibility of amicus participation is thus irrelevant to intervention as a matter of right.

## II. The District Court Abused Its Discretion When It Denied Permissive Intervention.

The sole condition for permissive intervention is easily met, and is met here. A potential intervenor must only have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Industry Associations' suit challenges the Federal Defendants' authority to temporarily hold off on leasing public lands and waters for oil and gas development so that they can review the effects of that leasing. The Conservation Groups' defense of that authority will of course share factual and

legal questions with that challenge, and no one—not the Industry Associations, nor the court below—suggests otherwise.

Beyond that, whether to grant permissive intervention is an exercise of discretion, and both of the reasons the court below offered for denying permissive intervention here amounted to an abuse of that discretion. The first—that the Federal Defendants would adequately represent the Conservation Groups' interests in this suit—"relie[d] on erroneous conclusions of law," as just explained. *In re Volkswagen of Am., Inc.*, 545 F.3d at 310 (quoting *McClure*, 355 F.3d at 408). The second was based on conjecture, rather than reality. *See id.* (stating that a court abuses its discretion if it "relies on clearly erroneous factual findings" or "misapplies the law to the facts" (quoting *McClure*, 355 F.3d at 408)). The court below stated that "to the extent that the Groups are advocating for positions not at issue in the proceeding," their intervention "could expand the case . . ., potentially increasing costs and delaying" it. ROA.1530. But a court cannot rely on pure speculation to deny permissive intervention.

The court below did not identify any basis for its speculation, and there is none. The Conservation Groups do, of course, have distinct views about the legal issues *already present* in this case. But neither common sense, nor anything in the record, supports the conclusion that their participation in the litigation of that closed set of issues could increase the cost of, or delay, this suit. Just the

opposite: The Groups stated unequivocally that they would not do so. ROA.213 ("the Conservation Groups do not plan to expand the issues in this case"); ROA.214 ("The Conservation Groups' demonstration that they meet the requirements to intervene, and discussion of Interior's rationale for pausing new leasing, will not expand the proper scope of this case.").

"An abuse of discretion becomes a clear abuse of discretion when it produces a patently erroneous result," and that is what happened here. *In re Abbott*, 956 F.3d 696, 707 (5th Cir. 2020) (internal quotations and citation omitted), *vacated on other grounds sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (mem.). Rule 24 favors intervention, and a court should grant intervention "where no one would be hurt and greater justice could be attained." *Espy*, 18 F.3d at 1205 (quoting *McDonald*, 430 F.2d at 1074). That is the case here; there is no argument that the Conservation Groups' intervention would harm any existing party. They should have been permitted to intervene.

## CONCLUSION

For these reasons, this Court should reverse the order of the District Court and allow the Conservation Groups to intervene as a matter of right or, in the alternative, permissively.

August 8, 2022

Respectfully submitted,

/s/ Melissa A. Hornbein

/s/ Christopher D. Eaton

Melissa A. Hornbein
WESTERN ENVIRONMENTAL LAW
CENTER
103 Reeders Alley
Helena, MT 59601
(406) 708-3058
hornbein@westernlaw.org

Emily Henrion Posner
POSNER LAW
7214 Saint Charles Ave., Box 913
New Orleans, LA 70118
(225) 746-8820
ep@emilyposnerlaw.com

*Counsel for Movants-Appellants Center
for Biological Diversity, Citizens for a
Healthy Community, Food & Water
Watch, Montana Environmental
Information Center, WildEarth
Guardians, and Western Organization of
Resource Councils*

Christopher Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
ceaton@earthjustice.org

Kirti Datla
EARTHJUSTICE
1001 G Street NW, Suite 1001
Washington, DC 20001
(202) 797-5241
kdatla@earthjustice.org

*Counsel for Movants-Appellants Cook
Inletkeeper, Defenders of Wildlife,
Friends of the Earth, Great Old Broads
for Wilderness, Healthy Gulf, Oceana,
Inc., Sierra Club, The Wilderness
Society, Valley Organic Growers
Association, and Western Watersheds
Project*

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on August 8, 2022. I certify that this brief was served on counsel for all parties via the Court's CM/ECF system, and served via email on Kyle Tisdel and Thomas Delehanty.

August 8, 2022

/s/ Christopher D. Eaton

Christopher D. Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
ceaton@earthjustice.org

*Counsel for Movants-Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, this document contains 9,653 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Calisto MT 14-point font.

August 8, 2022

/s/ Christopher D. Eaton

Christopher Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
ceaton@earthjustice.org

*Counsel for Movants-Appellants*